

**ORDERED in the Southern District of Florida on January 06, 2011.**

                                                                                    _____
                                                                                              A. Jay Cristol, Judge
                                                                                         United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| In re: | Case No. 10-20733-BKC-AJC |
|---|---|
| HARBOUR EAST DEVELOPMENT, LTD. | Chapter 11 |
| Debtor. | |
| _____/ | |

**ORDER DENYING DEBTOR'S MOTION TO COMPEL 7935 NBV, LLC'S PRODUCTION OF DOCUMENTS**

THIS CAUSE came before the Court upon the Debtor's Motion to Compel 7935 NBV, LLC's Production of Documents [D.E. #220] (the "Motion to Compel") and NBV's Response in Opposition to the Motion to Compel [D.E. 186] (the "Response"). The following are the Court's findings of fact and conclusions of law upon which it bases its denial of the motion.

**I. FINDINGS OF FACT**

1.      On April 22, 2010 (the "Petition Date"), the Debtor filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has been operating its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108

of the Bankruptcy Code. No creditors' committee has been appointed in this case and no request for the appointment of a trustee or examiner has been made.

2. The Debtor is a limited partnership organized and existing under the laws of the State of Florida. The general partner of the Debtor is Harbour Development, LLC. The manager/member of the general partner is Mario Egozi.

3. NBV is a Florida limited liability company with its principal place of business in Lauderhill, Florida. NBV is a secured creditor in the above-captioned bankruptcy proceeding. NBV is the assignee and successor-in-interest to Northern Trust Bank ("Northern Trust"), which previously served as the Debtor's primary secured lender.

4. On or about December 28, 2005, Northern Trust made a commitment to loan the Debtor the principal amount of $16,900,000.00 (the "Loan"). The Loan documents were substantially comprised of, *inter alia*, (i) a promissory note ("Note") in the principal amount of $16,900,000.00, (ii) a mortgage on the real property, (iii) a construction loan agreement (the "Construction Loan Agreement), in which Northern Trust agreed to make the Loan to the Debtor for the Debtor to construct a luxury condominium building on the real property (the "Project") and subsequently sell the units, and (iv) a personal guaranty signed by Egozi (these documents are referred to collectively as the "Loan Documents").

**A. CIELO on the Bay**

5. The Debtor is the developer and owner of the luxury residential condominium development known as CIELO on the Bay ("CIELO" or the "Property") located at 7935 East Drive, North Bay Village.

6. CIELO contains 35 residential condominium units (the "Condominium Units"). The Condominium Units range in size from 1,840 square feet to 1,900 square feet and are

configured as two-bedroom, three bedroom, and penthouse units. The Condominium Units are either designer ready, unfinished, or developer finished.

### B. The Debtor's Rule 2004 Subpoena

7. On June 14, 2010, the Debtor issued a Rule 2004 subpoena (the "Subpoena") to NBV seeking, *inter alia*, the projection of any analysis, business plans, and other documents relating to the valuation of the CIELO project, and documents relating to NBV's refusal to consent to the Debtor's leasing of Condominium Units.

8. On June 25, 2010, NBV responded to the Subpoena by producing, in its calculation, over 2,000 pages of non-objectionable documents and by filing objections to objectionable portions of the Debtor's Subpoena (the "Objection"). [ECF No. 93]

9. On September 21, 2010, the Debtor filed a Motion to Compel Production seeking to compel NBV to produce any documents that may not have been produced on June 25, 2010 (the "Motion to Compel"). [ECF No. 220].

10. On November 2, 2010, NBV filed a response to the Motion to Compel, affirming that it had produced all documents in its possession, custody or control with respect to Subpoena request numbers 1, 2, 4, 5, 6, 7, and 8. Accordingly, the only requests at issue were request numbers 3 and 9 (the "Response to the Motion to Compel"). [ECF No. 286].

11. Debtor's **request number 3** requests the following documents:

> All documents related to NBV's purchase and acceptance of the assignment of the Note, Mortgage and related loan documents from Northern Trust including without limitation NBV's analysis of the Project, valuation of the Project, pro formas for the Project, business plan for the Project, presales of condominium units in the Project, leases of condominium units in the Project, and communications with any person or party relating to the Project or Loan Documents, including but not limited to Northern Trust, CBRE, Integra Realty Resources, Cooper Consulting Engineers, Inc., Peter Zalewski, or Condo Vultures, LLC.

12. The Debtor's **request number 9** requests the following documents:

3

> Any and all documents relating to the relationship between NBV and Thibault, including but not limited to Thibault's direct or indirect ownership of any interest in NBV and the participation of any corporate officer, principal or shareholder with a controlling interest of Thibault, and the spouse, minor child or agent of such person, in the management of the affairs of NBV.

13. On December 2, 1010, the Court entered an Order requiring NBV to serve a detailed privilege log to Debtor and to produce all documents responsive to the Subpoena to which it was not asserting a claim of privilege or other basis of nondisclosure (the "Production Order"). [ECF No. 303]

14. On December 3, 2010, NBV produced, in its calculation, over 2,100 *additional* documents along with an attorney-client privilege log and attorney-client privilege redaction log. NBV also included a log designating certain documents *being* produced as "confidential" in accordance with this Court's prior Agreed Ex-Parte Protective Order. [ECF No. 237]

15. NBV asserts that it has now produced all non-attorney/client privileged documents in its possession, custody or control with respect to Subpoena request number 3. Thus, the only documents not produced pursuant to NBV's objections relate to request number 9 concerning the relationship between NBV and Thibault Messier Savard & Associates ("TMSA").

## II. CONCLUSIONS OF LAW

### A. NBV's Objection to Request Number 3 is Moot on Account of NBV's Production of all Non-Attorney/Client Privileged Documents Responsive to Request Number 3

16. NBV has withdrawn all of its prior objections to Request Number 3 and proffers that it has produced <u>all</u> responsive documents in its custody, possession, or control, except for any documents that are protected by the attorney-client and attorney work product privileges, and these documents have been identified and disclosed by NBV in its attorney-client privilege logs.

4

17. For the avoidance of any doubt, to the extent that NBV is still in possession of any non-privileged documents responsive to Request Number 3, the Court Orders that those documents be produced to Debtor within three (3) business days of this Order.

**B.  NBV's Objection to Request Number 9 is Sustained on Account of the Debtor's and the Court's Inability to Enforce, Apply, or Implement Any Provisions of the Helms-Burton Act**

18. The documents responsive to Request Number 9 (i.e. documents concerning the relationship between NBV and TMSA) are not relevant to this proceeding. It appears the documents requested are aimed at discovery relative to the Debtor's claims against NBV under the Helms-Burton Act. However, as the Court has previously expressed, it is without jurisdiction to consider such claims. Generally, the Helms-Burton Act creates two sanctions with respect to Cuba: (1) Title III provides that a private U.S. individual may bring suit in U.S. federal courts against third-country companies "trafficking" in expropriated Cuban property that was once owned by that private individual; and (2) Title IV provides that foreign persons may be excluded from the United States based on their relationship to entities trafficking in confiscated property formerly owned or claimed to be owned by U.S. nationals.

19. Title III of the Helms Burton Act is inapplicable and unenforceable because it has never been implemented and/or put into effect. Moreover, Title III of the Act was intended to grant U.S. nationals a private right of action to bring suit in a U.S. federal court against persons who "traffic" in *their* confiscated property in Cuba.

20. It is undisputed that the Debtor does not own any claims to "confiscated" property, as evidenced by the real and personal property listed in its Schedules of Assets and Liabilities of record [ECF Nos. 27, 38 and 58]. Therefore, the Debtor does not have standing to pursue a cause of action under Title III of the Act.

5

21.     Title IV of the Helms Burton Act is similarly inapplicable and unenforceable because its enforcement rests *exclusively* with the Executive Branch of the government.  Title IV of the Act can only be "administered by the Secretary of the Treasury, who has delegated that authority to the Office of Foreign Assets Control ("OFAC"), which has promulgated regulations under the statute."  *Lamb v. ITT Corp.*, Case No. 8:09CV95, 2010 WL 376858, at *2 (D. Neb. Jan. 26, 2010) (citing 31 C.F.R. § 515.802; 31 C.F.R. Part 515).

22.     Specifically, Title IV of the Act provides that only "[t]he ***Secretary of State*** shall deny a visa to, and the ***Attorney General*** shall exclude from the United States, any alien who the ***Secretary of State*** determines is a person who . . ." traffics in "confiscated" property formerly owned or claimed to be owned by U.S. nationals.  22 U.S.C. § 6091(a) (emphasis added).  Accordingly, only the Secretary of State and the Attorney General are vested with authority to enforce the provisions of the Act.

23.     "Courts have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."  *Nsiah v. Perryman*, 129 F.3d 119 (7th Cir. 1997) (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953)).  In fact, "the judiciary has refused to intrude on the process of granting or denying visas."  *Id.*  Thus, federal courts have uniformly held that "[t]he authority to issue visas 'has long been an area of legislative discretion in which courts have determined they do not have the authority to intervene.'"  *Pedrozo v. Clinton*, 610 F.Supp.2d 730, 735 (S.D. Tex. 2009) (citing *Kummer v. Shultz*, 578 F. Supp. 341, 342 (N.D. Tex. 1984)).

24.     Therefore, Title IV of the Act does not provide this Court with the ability to enforce the provisions of the Act and impose the sanction of excluding an offender from the

6

United States or to deny their participation in legal proceedings once in the United States. Similarly, this Court also does not have the authority or jurisdiction to compel the Executive Branch, through the Secretary of State, the Attorney General or Office of Foreign Assets Control ("OFAC"), to deny a visa or exclude any foreign person from the United States.

25.     If the Executive Branch wanted to obtain the documents requested in Request Number 9, it certainly has the ability to do so pursuant to the *exclusive* authority vested in it under the Act.

26.     The Debtor has no standing to pursue discovery under the Helms Burton Act. Accordingly, NBV need not produce any documents responsive to Request Number 9 as such documents are not relevant to this proceeding.

For the reasons stated herein, it is

**ORDERED AND ADJUDGED** as follows:

1.   NBV's Objection to Request Number 3 is moot on account of the withdrawal of same, and in light of NBV's production of documents responsive to Request Number 3;

2.   To the extent NBV is still in custody, control, or possession of any non-attorney client privileged documents responsive to Request Number 3, NBV must produce the documents to the Debtor within three (3) business days of this Order; and

3.   NBV's Objection to Request Number 9 is SUSTAINED and the Debtor's Motion to Compel is DENIED.

###

Submitted by:

Jose A. Casal, Esq.
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
Tel:    305-374-8500
Fax:    305-789-7799

Copies furnished to:
Jose A. Casal, Esq.

(*Attorney Casal is directed, pursuant to Local Rule 5005-1, to serve conformed copies of this Order upon the Service List attached to the original motion, immediately upon receipt hereof, and to file a certificate of service with the Court confirming such service.*)