

**ORDERED in the Southern District of Florida on September 27, 2011.**

_____
A. Jay Cristol, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov**

In re:

HARBOUR EAST DEVELOPMENT, LTD.,   Case No. 10-20733-BKC-AJC

          Chapter 11

    Debtor.
_____/

**ORDER CLARIFYING MEMORANDUM OPINION AND ORDER GRANTING
DEBTOR'S MOTION TO APPROVE LEASE AGREEMENTS**

This matter came before the Court for hearing on August 18, 2011 at 10:30 a.m. upon *7935 NBV, LLC's Motion to Clarify or, in the Alternative, Reconsider Memorandum Opinion and Order Granting Debtor's Motion to Approve Lease Agreements* filed on January 20, 2011 [ECF No. 348] (the "Motion to Clarify"). Based upon the *Debtor's Motion to Approve Leasing of Unsold Units* [ECF No. 159] (the "Leasing Motion"), *7935 NBV LLC's Response in Opposition*

*to Debtor's Motion to Approve Leasing of Unsold Units* [ECF No. 172], and the evidence presented to the Court at an evidentiary hearing on September 24, 2010 [the "<u>Evidentiary Hearing</u>"), the Court entered its *Memorandum Opinion and Order Granting Debtor's Motion to Approve Lease Agreements* [ECF No. 338] (the "<u>Leasing Order</u>"), by which the Court authorized the Debtor to lease Unsold Condominium Units despite the contentions by first priority mortgage holder 7935 NBV, LLC ("<u>NBV</u>") that the leasing of Unsold Condominium Units without NBV's consent violates applicable loan documents and that such leasing would result in a decline in the value of its collateral for which it has not been adequately protected.

After entry of the Leasing Order on January 6, 2011, NBV timely filed the Motion to Clarify pursuant to Fed. R. Bankr. P. 9023.  By the Motion to Clarify, NBV is not seeking wholesale reconsideration of the Court's findings and conclusions in Leasing Order, but rather seeks clarification regarding a single narrow issue – the extent of the leasing authority afforded to the Debtor by the Leasing Order.

The Debtor and NBV agreed to adjourn the initial hearing on the Motion to Clarify pending a judicial settlement conference in this case and, during the period of adjournment, the Debtor agreed not to commence or seek approval of any lease or rental arrangement that would result in more than twenty-two Unsold Condominium Units being leased or rented at any particular time.[1]

As set forth in the Motion to Clarify, the Debtor has now advised NBV that it intends to lease all of the Unsold Condominium Units (presently thirty-one of the thirty-five units in the Cielo condominium project).  Motion to Clarify ¶ 7.  To this end, the Debtor recently sought use

---

[1] *Order Granting Agreed Motion to Continue Hearing on 7935 NBV, LLC's Motion to Clarify or, In the Alternative, Reconsider Memorandum Opinion and Order Granting Debtor's Motion to Approve Lease Agreements* [ECF No. 380] (the "<u>Order Continuing Hearing</u>").

of cash collateral to build out additional units for rental,[2] entered into a rental listing agreement with a broker,[3] and filed a Third Amended Plan of Reorganization that assumes thirty-one units will be rented on the Effective Date of the Plan.[4]

NBV contends that in the Debtor's Leasing Motion and at the Evidentiary Hearing, the Debtor only presented evidence pertaining to a "controlled sell-out" scheme that contemplated leasing of up to sixteen Unsold Condominium Units to cover expenses while the Debtor continued to market the remaining Unsold Condominium Units for sale.  Similarly, the appraisal by Integra Realty Group and the testimony of Michael Cannon presented at the Evidentiary Hearing expressly assumed rental of fifteen Unsold Condominium Units.[5]  NBV suggests that the Court's conclusions in the Leasing Order are based upon evidence and testimony that would be markedly different if the Cielo property were to become a "rental building" with leasing at levels approaching 100%.

The conclusions and calculations set forth in the Court's Leasing Order specifically referenced and incorporated the "controlled sell-out period" concept.[6]  Accordingly, NBV urges the Court to conclude that the Leasing Order was not intended to grant the Debtor *carte blanche* to convert the Property into a rental project based upon the evidence presented at the Evidentiary Hearing, but rather only intended to authorize the Debtor to proceed with the proposal to lease up to sixteen Unsold Condominium Units, as set forth in the Leasing Motion and the financial

---

[2] *See Debtor's Third Motion for Order (I) Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c)(2) and (II) Authorizing the Recovery of Maintenance and Preservation Expenses from Property Securing Allowed Claims Pursuant to 11 U.S.C. § 506(c)* [ECF No. 421] and Budget annexed thereto.
[3] *See Application to Employ Trust Group Realty as Real Estate Broker* [ECF No. 431].
[4] *See Disclosure Statement Related to Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [ECF 449] at Ex. 4 (10 year projections).
[5] Exhibits C & D, Sept. 24, 2010 Evidentiary Hr'g. *See* ECF No. 401 (Exhibit Register reflecting admission of same).
[6] Leasing Order at ¶¶ 66 & 81 n.3.

projections annexed to the Debtor's *First Amended Disclosure Statement Relating to Debtor's Second Amended Plan of Reorganization* [ECF No. 320].

Although the Court adheres to the findings and conclusions set forth in the Leasing Order regarding the Debtor's leasing program, NBV is correct that the Court was only able to consider the evidence presented at the Evidentiary Hearing in rendering its opinion.  The record at that Evidentiary Hearing makes plain that, at that time, the Debtor sought to lease up to sixteen Unsold Condominium Units while embarking on a sales program consistent with its then-pending Second Amended Plan of Reorganization (the "Second Amended Plan").

Debtor's counsel linked the proposed leasing program and the Second Amended Plan at the Evidentiary Hearing by arguing, among other things, that "[a]dditional leasing *up to the level that we're proposing*, would basically carry the entire expenses of the building which would allow us to go forward with a controlled sell-out of the building over, what we hope, would be a market recovery over the next several years *as we set forth in our plan* . . . "Tr. of Evidentiary Hr'g, 8:20-9:3 [ECF No. 259] (emphasis added).  The Debtor's principal, Mario Egozi, also told the Court that the Debtor was pursuing a limited leasing program.  Mr. Egozi testified that he has "no interest in renting the entire building.  I want to rent just enough [to] cover our expenses".  *Id.* at 53:12-14.

Accordingly, the Court determined that "the leasing program is likely to enhance the value of the estate by at least $450,000"[7] and approved *the* leasing program that was put forward by the Debtor at that time.  By this Order, the Court reiterates its approval of the Debtor's limited leasing program, as well as its willingness to consider approval of leases and NBV's objections to same on a case-by-case basis going forward.

---

[7] Leasing Order at ¶ 81.

Based on the record evidence in this matter, however, this Court cannot find and conclude that the Debtor's current proposal to lease all Unsold Condominium Units will enhance the value of the estate, or that NBV would be adequately protected for the use of its collateral in that manner. At the August 18, 2011 hearing on the Motion to Clarify, NBV argued that conversion of the Cielo building to a nearly 100% rental building would impair the value of the building. Specifically, NBV argues that rather than the $8 million appraisal of Cielo as a condominium project in the hands of a third-party investor that was presented by Integra Realty Group at the Evidentiary Hearing, investors would apply capitalization rates ranging from 4.7 to 6.4 percent applicable to a rental building in Miami-Dade County.[8] By applying these capitalization rates to the Debtor's projected rental income pursuant to its proposed cash collateral budget [ECF No. 421], NBV argued that an investor would value the CIELO property at between $4.031 million and $5 million – a substantial diminution from the appraised value of the project as a condominium building.

Although the capitalization rate data presented by NBV was not presented as competent evidence in the context of an evidentiary hearing, it appears to form the basis of a colorable argument that the rental of all of the Unsold Condominium Units may result in a reduction of the value of the CIELO property for which NBV may not be adequately protected. More importantly, it is the Debtor's burden to demonstrate that NBV is adequately protected[9] and the evidence presented at the Evidentiary Hearing does not address leasing to the extent that the Debtor now proposes.

It is therefore

---

[8] NBV utilized capitalization rates from the March 2011 Cap Rate Survey by CBRE (4.7% to 5.25%) and the *Survey of Emerging Market Conditions*, University of Florida Bergstrom Center for Real Estate Studies, August 2011 (6.4%).
[9] 11 U.S.C. § 363(p)(1).

**ORDERED AND ADJUDGED** that NBV's Motion to Clarify is GRANTED.  The Leasing Order, which remains in full force and effect, is CLARIFIED to specify that the Court intended to and did authorize a leasing program of up to sixteen Unsold Condominium Units and that approval of additional leases will, absent NBV's consent,[10] be considered on a case-by-case basis upon timely motion by the Debtor and the presentation of appropriate evidence.

# # #

Submitted by:
Mindy A Mora, Esq.
Jeffrey I. Snyder, Esq.
Bilzin Sumberg Baena Price & Axelrod, LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131

Copy furnished to:
Mindy A. Mora, Esq., who shall serve a copy of this order on all interested parties and file a certificate of service.

---

[10] NBV consented to the rental of up to twenty-two Unsold Condominium Units.  *See Order Continuing Hearing*, ECF No. 380.