

**ORDERED in the Southern District of Florida on May 21, 2012.**

_____

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

In re:

HARBOUR EAST DEVELOPMENT, LTD.,                    Case No. 10-20733-BKC-AJC
                                                   Chapter 11

     Debtor.

_____ /

**MEMORANDUM OPINION AND ORDER GRANTING CHAPTER 7 TRUSTEE'S
MOTION TO (A) COMPROMISE CONTROVERSY AND APPROVE GLOBAL
STIPULATION OF SETTLEMENT BETWEEN JOEL TABAS, AS CHAPTER 7
TRUSTEE FOR THE ESTATE OF HARBOUR EAST DEVELOPMENT, LTD., AND
7935 NBV, LLC, AND (B) SELL REMAINING PERSONAL PROPERTY FREE AND
<u>CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES</u>**

     This matter came before the Court for hearing on April 18, 2011 at 2:00 p.m. upon the

_Motion to (A) Compromise Controversy and Approve Global Stipulation of Settlement Between_

_Joel Tabas, as Trustee of the Estate of Harbour East Development, Ltd., and 7935 NBV, LLC,_

_and (B) Sell Remaining Personal Property Free and Clear of Liens Claims and Encumbrances_

[ECF No. 656] (the "Motion") filed by Joel Tabas in his representative capacity as the duly appointed chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Harbour East Development, Ltd. ("Harbour East" or the "Debtor") and the *Response in Opposition* [ECF No. 667] (the "Response") filed by the Debtor and certain of the Debtors' estate professionals that are the holders of chapter 11 administrative claims against the Estate[1] (collectively, the "Objecting Parties").  Secured Creditor and mortgage holder 7935 NBV LLC ("NBV") is party to the proposed settlement and supports its approval.

## INTRODUCTION

As set forth in further detail below, the Trustee seeks approval of a global settlement of all of the remaining adversary proceedings and contested matters between the Estate and NBV in exchange for a cash payment of $50,000 from NBV (the "Settlement Amount").  NBV has agreed not to participate in any distribution of the Settlement Amount.  The Objecting Parties contend that the "likely net recovery to the [E]state" if the Trustee were to pursue (a) avoidance of NBV's lien on the Debtor's remaining personal property, (b) the avoidance of NBV's lien on purchaser deposits, (c) a surcharge claim pursuant to 11 U.S.C. § 506(c), and (d) appeal of a state court foreclosure judgment would "be much greater than $50,000"; and, therefore the Objecting Parties assert the proposed settlement falls below the lowest point in the range of reasonableness and should be denied.

Although the Court is sensitive to the concerns raised by the Objecting Parties, it is not the role of this Court to substitute its own business judgment for that of the Trustee.  *Hill v. Burdick (In re Moorhead Corp.)*, 208 B.R. 87, 89 (1st Cir. BAP 1997), *aff'd*, 201 F.3d 428 (1st Cir. 1998); *In re Vazquez*, 325 B.R. 30, 36 (Bankr. S.D. Fla. 2005) (citing *In re W.T. Grant Co.*,

---

[1] The Response was filed by the Debtor, and "joined" by Bauch & Michaels, LLC, Genovese Joblove & Battista, P.A., Meland Russin & Budwick, and Analytic Consulting Group.

699 F.2d 599, 608 (2d Cir. 1983)) (court is neither to "rubber stamp" trustee's proposals nor to substitute its judgment for that of trustee). Moreover, the Court is not expected to hold a "mini-trial" to determine the merits of each and every claim subject of a disputed settlement, but "must simply be convinced that a trustee's judgment is based upon a sound assessment of the situation." *In re Smithey*, No. 10-30310, 2011 WL 3102308 at *8 (Bankr. N.D. Ohio (Jul. 25, 2011) (citing *In re Schmitt*, 215 B.R. 417, 423 (9th Cir. BAP 1997)).

Although, as with nearly any settlement, it is possible that the Estate may achieve a more favorable outcome through litigation, the Court observes that such an outcome requires the Estate to find professionals willing to take on such litigation on a de facto contingency basis,[2] to prevail at an appellate level on claims that this Court has previously rejected, and to successfully prosecute a surcharge claim in connection with professional fees that were incurred by the Debtor over NBV's objection.

The question presented here is not whether the settlement on the terms proposed is objectively better for the Estate than the litigation alternative, nor is the question whether this Court or the Objecting Parties would have made a different decision under the same circumstances – the question is whether the Trustee's decision was reasonable. *In re Ashford Hotels, Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998).

After taking into account the factors outlined by the Eleventh Circuit in *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990), the Court finds: (a) that the Trustee acted reasonably in entering into the proposed settlement; and (b) that the settlement is clearly above the lowest point in the range of reasonableness. Accordingly, the

---

[2] The Estate currently lacks any assets beyond a $10,000 carve out paid to it by NBV in connection with the sale of the Property (as defined herein).

Court will grant the Trustee's Motion and approve the proposed settlement with NBV and accompanying sale of personal property.

## JURISDICTION

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding that this Court may hear and determine pursuant to 28 U.S.C. § 157(b) and neither the Trustee, the Objecting Parties, nor NBV have objected to the entry of a final order on this matter by this Court.

## GENERAL BACKGROUND

On April 22, 2010 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. As of the Petition Date, the Debtor was the developer and owner of the luxury residential condominium development known as Cielo on the Bay ("Cielo" or the "Property") located at 7935 East Drive, North Bay Village. Cielo contains 35 residential condominium units (the "Condominium Units").

On or about December 28, 2005, the Debtor executed a construction loan agreement (the "Loan Agreement") with Northern Trust Bank, N.A. ("Northern Trust"), whereby Northern Trust made a construction loan (the "Loan") to the Debtor in the aggregate principal amount of $16.9 million. The Loan was evidenced by a promissory note (the "Note") executed by the Debtor in favor of Northern Trust in the principal amount of $16.9 million, which in turn was secured by a first priority mortgage, assignment of rents, security agreement, financing statement, and fixture filing executed by the Debtor in favor of Northern Trust (the "Mortgage").

On or about February 14, 2006, Northern Trust perfected its security interest in the real property and in "fixtures" by recording the Mortgage with the clerk of court for Miami-Dade County at OR Book 24237, Page 3301-3323, as CFN 2006R0162511.

On or about December 21, 2009, Northern Trust, as Seller, and TMS FL 2, Inc., as Purchaser ("TMS"), entered into a Loan Sale Agreement, pursuant to which Northern Trust sold the Loan to NBV as assignee of TMS.

**Avoidance Litigation**

On September 10, 2010, the Debtor initiated an adversary proceeding seeking to avoid NBV's security interests in (a) the Estate's interest in purchaser deposits in respect of Condominium Units, and (b) the Debtor's personal property, because neither Northern Trust nor NBV filed a Form UCC-1 Financing Statement with the Florida Secured Transaction Registry naming the Debtor [Adv. Pro. 10-03584-AJC] (the "Lien Avoidance Litigation").

On July 22, 2011, this Court entered its *Order (A) Granting Defendant 7935 NBV, LLC's Motion for Summary Judgment on Count II and (B) Denying Debtor's Cross-Motion for Summary Judgment on Complaint to Avoid NBV's Security Interests* [Adv. Pro. 10-3584-AJC, ECF No. 48] (the "Deposit Summary Judgment Order").  In the Deposit Summary Judgment Order, this Court granted summary judgment in favor of NBV and determined that purchaser deposits are subject to the Mortgage held by NBV and that the Debtor cannot avoid NBV's liens and security interest with respect to such deposits.

On January 31, 2012, this Court entered its *Order and Memorandum Opinion Denying Debtor's Motion for Partial Summary Judgment* [Adv. Pro. 10-3584-AJC, ECF No. 58] (the "Personal Property Summary Judgment Order") denying summary judgment.  In the Personal Property Summary Judgment Order, this Court rejected the Debtor's contention that the Mortgage altered the classification and perfection scheme under the Uniform Commercial Code, observed that most of the property set forth in subsection (f) of the Granting Clause would

ordinarily constitute "fixtures", and found that a genuine issue of material fact exists as to which property constitutes fixtures under the criteria established by Florida law.

No further proceedings have occurred in the Lien Avoidance Litigation and the Debtor, the Trustee, and NBV have continued the pretrial conference and status conference pending determination of this Motion.

**Foreclosure Appeal**

On January 13, 2010, NBV filed a Complaint of Foreclosure in the Circuit Court of the 11th Judicial Circuit (the "State Court") against the Debtor and certain other defendants as set forth therein [case no. 10-02180-CA-25].

On May 10, 2011, the State Court entered its Order Granting Plaintiff's Motion for Summary Final Judgment in Foreclosure (the "State Court Summary Judgment") and its Order Denying Defendant's Motion to Strike Affidavit of Bernard Thibault (the "Affidavit Order"). On June 3, 2011, the State Court entered its Final Judgment of Foreclosure against the Debtor and others (the "Foreclosure Judgment") in favor of NBV. Among other determinations, the State Court determined that the Debtor owes NBV $14,997,290.96 after reducing the amount of the Debtor's debt to NBV by proceeds arising from the sale of a condominium unit which were previously remitted to NBV and that NBV's valid lien on the Property "is superior in dignity to any right, title, interest or claim of the defendants."

On or about June 17, 2011, the Debtor filed a Notice of Appeal with the State Court commencing an appeal to the Third District Court of Appeal (the "Foreclosure Appeal") of the State Court Summary Judgment, the Foreclosure Judgment, and the Affidavit Order (collectively, the "Appealed Orders"). The effectiveness of the Appealed Orders has not been

stayed.  The Appeal is presently pending before the Third District Court of Appeal as Case No. 3D-11-1668.

**Pending Contested Matters**

On December 23, 2011, the Debtor filed its *Motion for Order Authorizing the Recovery of Maintenance and Preservation Expenses From Property Securing Allowed Claims Pursuant to 11 U.S.C. § 506(c)* [ECF No. 581] (the "Surcharge Motion").  By the Surcharge Motion, the Debtor sought the "recovery of legal, accounting and management expenses relating to the administration of the bankruptcy estate and, in particular, the management of the Property, the implementation of the rental program, and the recovery of the defaulted earnest money deposits; . . . [and] the recovery of legal, accounting and management expenses relating to the preparation for and sale of the Condominium Units".  The Surcharge Motion remains pending and is under the exclusive control of the Trustee, who is the only party with standing to seek the relief sought by the Surcharge Motion under applicable law.  *See In re Smith Int'l Enters., Inc.*, 325 B.R. 450, 456 (Bankr. M.D. Fla. 2005).

On June 22, 2012, NBV filed its proof of claim, which claim was designated by the Clerk of the Court as Claim No. 6 (the "NBV Claim").  By the NBV Claim, NBV asserts a secured claim in the amount of $15,598,530.54 as set forth in further detail therein.  On November 4, 2011, the Debtor filed an objection to the NBV Claim (the "Objection to Claim") [ECF No. 499].

**Sale of Property and Related Assets to NBV**

On December 29, 2011 (the "Conversion Date"), the Court entered its *Order Denying Confirmation and Converting Case Under Chapter 11 to Case Under Chapter 7* [ECF No. 596]. The Office of the United States Trustee appointed the Trustee as chapter 7 trustee pursuant to 11 U.S.C. § 701 [ECF No. 593].

On December 29, 2011, this Court also granted full and complete stay relief to NBV and authorized it to conduct a public foreclosure sale of the Property and to seek appointment of a receiver pending completion of such sale. *Order Granting 7935 NBV LLC's Second Renewed Motion for Relief from Automatic Stay* [ECF No. 595].

On February 1, 2012, this Court entered its *Order Authorizing and Approving (A) Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims and Encumbrances to 7935 NBV LLC, (B) Assumption and Assignment of Submerged Land Lease, (C) Assignment of Unexpired Tenant Leases, and (D) Certain Related Relief* [ECF No. 646] (the "Sale Order"). In accordance with and as authorized by the Sale Order, the Trustee transferred to NBV all of the Estate's right, title, and interest to the Property and certain related assets in exchange for a $10,000 credit bid on February 3, 2012. Among other closing documents, the Trustee executed a Trustee's Bill of Sale by which the Trustee transferred to NBV all of the Estate's right title and interest in, among other things, all of the personal property that comprises, is used in connection with or otherwise pertains or relates to the Property that (i) was acquired by Harbour East Development, Ltd or the Estate on or after April 2, 2010 or (ii) the Bankruptcy Court determines is subject of NBV's liens and/or security interests under applicable non-bankruptcy law (the "Transferred Personal Property").

Pursuant to the Sale Order, NBV also consented to a carve-out in favor of the Estate in the amount of $10,000 (the "Carve Out") and agreed to waive its right to any distributions from the Estate from the Carve Out.

## Remaining Purchaser Deposits

As of the Conversion Date, the law firm of Blass & Frankel, P.A. (the "Escrow Agent") was in possession of certain funds deposited by unit purchasers toward the purchase of

Condominium Units pursuant to purchase agreements executed by such unit purchasers (the "Remaining Deposits").

As of the Conversion Date, Osvaldo and Albert Garcia (the "Garcias")[3] and Paul Kempinski ("Kempinski" and, together with the Garcias, the "Unit Purchasers") have asserted that the Debtor breached its obligations under their respective Purchase Agreements and that the Unit Purchasers are therefore entitled to (a) return of their allocable portion of the Remaining Deposits, and (b) assert a claim against the Estate for all deposit monies that were funded by such Unit Purchasers but that were utilized by the Debtor in construction and therefore are not Remaining Deposits.

Prior to the Conversion Date, the Debtor had maintained that defenses may exist to the return of the Remaining Deposits and refused to release the Remaining Deposits to the Unit Purchasers.  Although the Debtor has disputed the perfection and priority of NBV's lien encumbering the Estate's right, title, and interest in the Remaining Deposits, the Bankruptcy Court has determined in the Deposit Summary Judgment Order that NBV has a first-priority lien encumbering such funds.

<u>**DISCUSSION AND ANALYSIS**</u>

Federal Rule of Bankruptcy Procedure 9019(a) provides that the court may approve a trustee's proposed compromise of a prepetition claim or controversy upon proper motion by the trustee and after notice and a hearing.  Fed. R. Bankr. P. 9019(a).  A starting point in analyzing any proposed settlement agreement is the general policy of encouraging settlements and favoring compromises. *In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993) (recognizing that the law favors compromise of disputes); *see also Myers v. Martin (In re Martin)*, 91 F.3d

---

[3] The Trustee has since reached a compromise with the Garcias that determines the Estate's interest (subject of NBV's claim of lien) in the Garcias' deposit to be $18,045.

389, 394 (3d Cir. 1996); *Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).

Approval of settlements is generally left to the sound discretion of the court based on whether the proposed settlements are "fair, reasonable, and in the interest of the estate." *See In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998). Compromises are favored in bankruptcy, especially where protracted litigation can erode the value of the estate and delay the administration of the case to the detriment of all creditors. *See e.g., In re Martin*, 91 F.3d at 393; *see also Fla. Trailer Co. v. Deal*, 284 F.2d at 571 (noting that Congress "infused" the trustee with settlement authority to avoid wasteful litigation and expense). Under the well-established standard for consideration of the merits of a settlement, a settlement should be approved unless it "falls below the lowest point in the range of reasonableness." *In re Bicoastal Corp.*, 164 B.R. at 1016 (quoting *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972))); *In re Arrow Air, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988).

In determining whether a settlement is within the range of reasonableness, the Court should consider the principal factors outlined by the Eleventh Circuit in *Wallis v. Justice Oaks II, Ltd.* (*In re Justice Oaks II, Ltd.*)*,* 898 F.2d 1544, 1549 (11th Cir. 1990): (a) the probability of success in the litigation; (b) difficulties to be encountered in collection; (c) the complexity of the litigation and related expense and inconvenience; and (d) the interests of the creditors. *See In re Bicoastal Corp.*, 164 B.R. at 1016; *In re Arrow Air, Inc.*, 85 B.R. at 891; *see also In re Marvel Entm't Group, Inc.,* 222 B.R. at 249; *see also Aetna Cas. & Sur. Co. v. Jasmine, Ltd.* (*In re Jasmine, Ltd.*), 258 B.R. 119, 123 (D.N.J. 2000); *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968); *Martin v. Kane* (*In re A&C*

*Properties*), 784 F.2d 1377, 1381 (9th Cir. 1986). These factors seek to balance the probable benefit and potential cost of pursuing a claim or defense against the costs of the proposed settlement.

1. **Probability of Success in Litigation and Complexity, Expense and Inconvenience of Litigation and Attendant Delay**

In evaluating the probability of success, the role of the Court is to "canvass the issues, and see whether the settlement falls below the lowest point in the range of reasonableness." *In re Ashford Hotels, Ltd.*, 226 B.R. at 802 (collecting cases). It is not necessary to conduct a "mini trial" to determine the merits of the underlying litigation or substitute this Court's judgment for that of the Trustee. *Id.* Rather, the Court's role is to test the Trustee's choice for reasonableness and, if the Trustee has made a reasonable choice, that decision must be approved. *Id.*

As the Trustee has disclosed in the Motion, he has "considered and evaluated not only his view of the strength of the Estate's legal arguments, but also has defined "success" to include achieving a recovery for the Estate that significantly exceeds the Settlement Amount after taking into account the costs and delay associated with protracted litigation." Motion at ¶ 34.

Although the Objecting Parties trivialize the costs of continued litigation in the Response by suggesting many of the legal issues have already been briefed, it is nevertheless the case that substantial costs would be associated with briefing and arguing appeals and trying fact-intensive matters such as surcharge and whether or not property is a fixture, which would themselves likely lead to protracted appeals. Continued litigation would involve expensive and burdensome discovery, additional motion practice, and several evidentiary hearings causing significant delay. With respect to the issues previously decided by the Court and regardless of the outcome of matters still to be litigated before the Court, protracted appeals may further increase the costs to the Estate and delay the resolution of this case potentially by several years.

Once the substantial administrative costs and risks associated with continued litigation and the delay in any recovery are factored in, it is at best unclear whether a litigated victory will provide any real value in excess of the value achieved through receipt of the Settlement Amount immediately.

A.     **The Lien Avoidance Litigation**

    (i)     *Remaining Personal Property*

The proposed settlement provides for the dismissal by the Trustee of Lien Avoidance Litigation and the contest to the sale of personal property that was not included in the Transferred Personal Property sold to NBV in accordance with the Sale Order (the "Remaining Personal Property").  This includes personal property that (i) was acquired by Harbour East Development, Ltd or the Estate prior to April 2, 2010 and (ii) did not become a fixture pursuant to Fla. Stat. § 679.1021(oo).

As set forth in the Motion, the Trustee contends that the proposed Settlement Amount is sufficient to compensate the Estate for the Remaining Personal Property because "the Remaining Personal Property that did not become fixtures likely consists of a small number of used appliances worth substantially less to the Estate than the Settlement Amount."  Motion at ¶ 37.

The Objecting Parties, on the other hand, assert that the Remaining Personal Property is "valued at $1,882,391" and consists of items set forth at Exhibit 2 to the Response.  Response at p. 18.  These items include elevators, air conditioners including roof top units, plumbing fixtures, the fire pump and fire alarm devices, and "custom casework", as well as fire extinguishers, and light fixtures.  Response at Ex. 2.

As the Objecting Parties acknowledge in the Response, this Court already observed in the Personal Property Judgment Order that most of the property set forth in subsection (f) of the

Granting Clause[4] would ordinarily constitute "fixtures" and found that a genuine issue of material fact exists as to which of the goods comprising the Remaining Personal Property became fixtures under the criteria established by Florida law.  Response at p. 18.  Although an appeal of the Personal Property Summary Judgment Order is possible, it would be costly and time-consuming and, even if successful, would lead to an expensive trial likely followed by further protracted appeals.

For the Estate to avoid NBV's lien as to the Remaining Personal Property, the Trustee would be required to prove, on an item-by-item basis, which of the goods listed on Exhibit 2 to the Response were acquired before April 2, 2010, and also did not meet the criteria to become a fixture under Florida law.  In addition, the Trustee would need to demonstrate that such property is property of the Estate as opposed to common elements that belong to the Cielo on the Bay Condominium Association (the "Condo Association") and are therefore not recoverable for the benefit of the Estate.

As the Court previously stated in the Personal Property Summary Judgment Order, elevators, central heating and air conditioning systems, fire suppression systems, and similar items included in the definition of Personal Property under the Granting Clause are ordinarily fixtures.  *See Allen v. McElrath*, 2009 WL 3255409 at *3 (Ohio Ct. App. Oct. 9, 2009) (central air conditioning systems are considered to be fixtures, not personal property); *Garrett v. Valley Sand and Gravel, Inc.*, 800 So.2d 600 (Ala. Civ. App. 2000) (central heating and air conditioning system is considered a fixture attached to the realty); *Silverman v. Mazer Lumber & Supply Co*., 252 Ala. 657 (Ala. 1949) (heating and air conditioning systems are fixtures); *Pierce v. City of*

---

[4] As set forth in the section of the Mortgage designated as the "Granting Clause", Harbour East, as mortgagor, granted Northern Trust, as mortgagee, a security interest in a list of property owned by Harbour East.  Subsection (f) of the Granting Clause is entitled "Personal Property" and granted a security interest to Northern Trust in all tangible equipment, fixtures and personalty.

*Lansing*, 694 N.W.2d 65 (Mich. App. 2005) (elevator located within four half-walls of and physically attached to the realty is clearly a fixture); *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107 (3d Cir. 1992) (an elevator is meant for use solely as a fixture); *Otis Elevator Co. v. Palmetto Const. Co.*, 237 F. 749 (4th Cir. 1916) ("elevators are in their nature fixtures absolutely essential to the use of an office building and not removable without serious injury to it"); *Kolenic v. Travelers Lloyds of Texas Ins. Co.*, 2003 WL 247117 at *1 (Tex. App.—Austin Feb. 6, 2003) (a building's plumbing system is considered to be the built-in network of pipes, are thus fixtures); *Wichita Gas Co. v. Public Service Commission of Kansas,* 2 F.Supp. 792 (D. Kan. 1933) (pipe line system is a permanent fixture); *Youngbey v. District of Columbia*, 766 F.Supp.2d 197 (D.D.C. 2011) (doors and windows are generally considered to be real property or fixtures to real property, and are thus not personal property); *People v. Fox,* 591 N.W.2d 384 (Mich. App. 1998) (a window of a building is a fixture and thus is an item of real property, not personal property).

Accordingly, the Trustee was reasonable in concluding that the Estate is unlikely to be able to demonstrate that most of the property listed on Exhibit 2 of the Response constitutes Remaining Personal Property that was acquired prior to April 2, 2010 and that did not become a fixture under Florida law.

Moreover, even if the building's pipes, central systems, elevators, and so forth are not fixtures or acquired after April 2, 2010 or property of the Condo Association, the Trustee nevertheless is of the view that those items likely do not have any substantial value to any party other than the owner of the Property – NBV – because the costs associated with removing such items from the Property would, in the Trustee's view, exceed their market value.  As for the fire extinguishers and some now-used appliances, that might legitimately be recoverable by the Estate if they are not property of the Condo Association, the Trustee is reasonable in concluding

14

that the liquidation value of such items is exceeded by the Settlement Amount and would be trumped by the costs of litigating to recover those items.

    *(ii)    Purchaser Deposits*

The Objecting Parties also contend that the proposed settlement is unreasonable because it relinquishes the Estate's claim to purchaser deposits, despite the Court having previously held in the Deposit Summary Judgment Order that such deposits are proceeds of the real property subject of the lien created by the Mortgage and not subject to the Uniform Commercial Code. Specifically, the Court held in accordance with *Church v. Colling (In re Aldersgate Foundation, Inc.)*, 878 F.2d 1326 (11th Cir. 1989) that earnest money deposits constitute proceeds of the underlying real property and are therefore encumbered by the mortgage thereon.

Moreover, in the Deposit Summary Judgment Order, the Court also held that even if the Uniform Commercial Code were applicable to determine perfection of a lien in purchaser deposits, NBV was properly perfected by constructive possession pursuant to Fla. Stat. § 679.3131 because the Escrow Agent acknowledged, in an authenticated record, that it was maintaining possession of the purchaser deposits for the benefit of NBV.

The Estate does not have a claim to the Remaining Deposits.  Although the Debtor recovered some $760,000 of purchaser deposit monies, the Objecting Parties acknowledge that the Estate's claim to the Remaining Deposits under Florida law, and this Court's prior decision in favor of unit purchasers Juan Mauricio Cuellar and James Milana [Adv. No. 10-03667, ECF No. 43], make recovery of the Remaining Deposits by the Estate unlikely even if NBV's lien were avoided.[5]  Response at pp. 5-6.

---

[5] As noted above, only 1 contested purchaser deposit remains (Kempinski) in the amount of $94,400, as the Trustee recently reached a settlement with the Garcias.

This Court cannot conclude that the Trustee acted unreasonably in agreeing to forego further litigation regarding the purchase deposits as part of a global settlement and in exchange for the Settlement Amount and releases.  Recovery for the Estate in respect of the purchaser deposits requires the Trustee to successfully appeal the Deposit Summary Judgment Order. Given the Deposit Summary Judgment Order and that the purchaser deposits recovered by the Debtor were already spent by the Debtor, this path to recovery obviously involves substantial risk as to outcome, extensive fees, costs, and delay, with seemingly minimal benefit to the Estate.

B.    **The Surcharge Motion**

The Objecting Parties also object to the proposed settlement because it provides for the withdrawal by the Trustee of the Debtor's previously-filed motion seeking surcharge for expenses incurred, including the unpaid professional fees of the Objecting Parties, for the implementation of a leasing program over NBV's objection, and for recovery of a portion of the aforementioned purchaser deposits, which the Debtor spent on operational expenses during the chapter 11 portion of its bankruptcy.  As the Response recites, section 506(c) provides that the Trustee "may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."   11 U.S.C. § 506(c).

Surcharge may be "employed to obtain reimbursement of expenses paid from unencumbered assets, if NBV demonstrably benefited by such expenses" if NBV expressly or impliedly consented to the expense or, absent such consent, that (a) the expenditure was necessary; (b) the amount expended was reasonable; and (c) NBV benefited from the expenditure.  *Id.* (emphasis added) (citing *In re Spa at Sunset Isles Condominium Assoc., Inc.*, 454 B.R. 898 (Bankr. S.D. Fla. 2011); *In re Cascade Hydraulics and Utility Service, Inc.*, 815

16

F.2d 546, 548 (9th Cir. 1987) (party seeking the surcharge must prove that its expenses were reasonable, necessary and provided a quantifiable benefit to the secured creditor)).  Here, cash that the Debtor's Estate utilized during the bankruptcy case to fund operating expenses, its leasing program, and other supposedly surchargeable expenses was cash collateral of NBV (although, as discussed above, the Objecting Parties continue to contest the holding that the purchaser deposits are subject to NBV's liens).  Accordingly, it appears all expenses were paid from NBV's cash collateral or remain unpaid administrative expenses that the Estate is unable to pay and therefore are not recoverable.

Furthermore, the Trustee would have to demonstrate the reasonableness of each expense and a demonstrable benefit to NBV that it obtained from each expense to which NBV objected (as opposed to an incidental benefit obtained by NBV from the Debtor's strategy pursued in its own interest).  This is a fact-intensive analysis which would likely result in protracted litigation.

Accordingly, the Trustee's belief, set forth in the Motion, that prosecution of the Surcharge Motion would not result in a significant recovery for the Estate in excess of the costs of prosecution, is not unreasonable.  The surcharge claim is rife with legal issues that support the Trustee's evaluation that the success of such a claim is doubtful, as well as his decision to enter into the settlement described in the Motion.

C.    **The Foreclosure Appeal**

Finally, the Debtor had taken an appeal of the Foreclosure Judgment to prevent or potentially set-aside a foreclosure sale of the Property in the State Court.  The Property, however, has now been sold to NBV pursuant to the Sale Order in this Court and not in the State Court pursuant to the Foreclosure Judgment.  Although the Objecting Parties oppose the Trustee's decision to dismiss this appeal as part of the proposed settlement, the Response fails to articulate

any potential benefit to the Estate from its continued prosecution.  The Response instead argues that reversal of summary judgment in the State Court may limit the Estate's liability to NBV under the Note and the Mortgage and the costs of prosecution are negligible.

The Trustee, however, notes that a reduction of the amount of the Estate's deficiency claim is of no moment because unsecured creditors do not stand to receive a distribution from the Estate.  Moreover, prosecution of the Foreclosure Appeal involves the costs of oral argument and, if successful, further litigation at the trial court level.

Although reversal of the Foreclosure Judgment may benefit the Debtor's principal, Mario Egozi, who remains potentially liable as a guarantor of the Loan, there is no benefit readily ascertainable for the Estate and a substantial risk that the Foreclosure Judgment will be affirmed on appeal. Accordingly, the Court does not find unreasonable the Trustee's business judgment that the cost of pursuing the appeal of the Foreclosure Judgment exceeds any benefit to the Estate.  The Court therefore concludes that the first two *Justice Oaks II, Ltd.* factors militate in favor of approval of the Motion and the proposed settlement.

**2.  Difficulties in Collection**

In the Motion, the Trustee argues that this *Justice Oaks* factor, collection, is not relevant to the Court's consideration of the Motion because the proposed settlement does not involve the payment of money damages to the Estate by NBV and the Trustee has no concern about the ability of NBV to fund the Settlement Amount.  The Objecting Parties do not take issue with this contention and, accordingly, the Court affords this factor no weight in its analysis.

**3.  Paramount Interest of Creditors and Deference to Their Reasonable Views**

With respect to the fourth *Justice Oaks* factor, the interests of creditors, the Trustee observes in the Motion that there are not a substantial number of unsecured creditors in this case

and that NBV is by far the largest unsecured creditor and supports approval of the proposed settlement.

The Court recognizes the Objecting Parties have an interest in the Trustee pursuing any claim that might generate proceeds to satisfy chapter 11 administrative claims. However, no other creditors took a position with respect to approval of the proposed settlement, and the Trustee has expressed his view that the proposed settlement is in the best interests of the Estate and a "better alternative to a long campaign that will not likely improve the prospects of payment to unsecured creditors in this case, particularly in light of the Court's prior rulings and sale of the Property." Motion at ¶ 47. The Court has no reason to undermine the Trustee's judgment, as his judgment is not unreasonable, particularly given the status of all the pending matters discussed previously herein.

## CONCLUSION

The Court believes the proposed settlement does not fall below the lowest level in the range of reasonableness and therefore will not substitute its judgment for that of the Trustee's. Accordingly, the Court determines that (i) adequate notice of the Motion has been given and a reasonable opportunity to object or be heard has been afforded to all interested persons and entities, (ii) good cause exists to grant the relief requested in the Motion, (iii) the compromise set forth in the Stipulation of Settlement (the "Stipulation") is above the lowest level in the range of reasonableness and therefore satisfies the standard set forth in *Wallis v. Justice Oaks II, Ltd.* (*In re Justice Oaks II, Ltd.*)*, 898 F.2d 1544 (11th Cir. 1990), and (iv) the terms of the proposed settlement, including the transfer of the Remaining Personal Property thereunder, were negotiated, proposed and entered into by the Trustee and NBV in good faith. Thus, it is

ORDERED that:

1.      The Motion is GRANTED and the objections raised in the Response are OVERRULED.

2.      The Stipulation is approved in its entirety pursuant to Federal Rule of Bankruptcy Procedure 9019(a) and its provisions are incorporated herein by reference as if set forth in this Order.

3.      The Trustee and NBV are authorized, bound by, and directed to take any and all necessary actions to effectuate the terms of the Stipulation and this Order.

4.      In accordance with the Stipulation, the Trustee is authorized to transfer the Estate's right, title, and interest in the Remaining Personal Property to NBV pursuant to 11 U.S.C. § 363 and the Trustee is authorized and directed to execute and deliver, and empowered to perform under, consummate and implement all instruments and documents that may be reasonably necessary or desirable to consummate such transfer, and to take all further actions as may be requested by NBV for the purpose of assigning, transferring, granting, conveying and conferring to NBV or reducing to possession, the Remaining Personal Property or as may be necessary or appropriate to the performance of the obligations as set forth in this Order or in the Stipulation.

5.      The transfer of the Remaining Personal Property to NBV authorized hereunder shall be a legal, valid, and effective transfer of such Remaining Personal Property and will vest NBV with all right, title, and interest of the Estate to such Remaining Personal Property free and clear of (i) all claims and interests, including, without limitation, any charge, lien, claim, mortgage, lease, sublease, hypothecation, deed of trust, pledge, security interest, option, right of use or possession, right of first offer or first refusal, easement, servitude, restrictive covenant, encroachment, encumbrance, third party interest or other restriction or limitation of any kind

(collectively, the "Encumbrances") and (ii) all debts arising under or out of, in connection with, or in any way relating to, any acts of Harbour East Development, Ltd., claims (as defined in section 101(5) of the Bankruptcy Code), rights or causes of action (whether in law or in equity, including any rights or causes of action based on theories of transferee or successor liability under any law, statute or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), obligations, demands, guaranties, rights, contractual commitments, restrictions, interests and matters of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of the Debtor's bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, except NBV will take title subject only to the liens and claims of the Miami-Dade Tax Collector, if any, secured by the Remaining Personal Property under applicable non-bankruptcy law as of the moment immediately preceding the Sale.

6.      NBV shall assume and become responsible for, from and after the date of the transfer of the Remaining Personal Property all obligations incurred in connection with the Remaining Personal Property or ownership thereof; however, the transfer of the Remaining Personal Property to NBV shall not subject NBV to any liability whatsoever with respect to the operation of the Debtor's business or the ownership of the Remaining Personal Property prior to the transfer or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including, without limitation, any theory of antitrust, successor, or transferee liability.

7.      The Trustee may transfer the Remaining Personal Property free and clear of all Encumbrances of any kind or nature whatsoever other than as set forth above because, in each

case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Those parties, if any, with claims or interests in the Remaining Personal Property that did not object or that withdrew their objections to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  To the extent that any parties have not consented or been deemed to have consented, such parties with claims or interests in the Remaining Personal Property fall within one or more of the other subsections of sections 363(f) of the Bankruptcy Code.

8.    Except as set forth in this Order, effective upon the transfer of the Remaining Personal Property to NBV authorized hereunder, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Encumbrances of any kind or nature whatsoever against or in the Debtor, the Estate, or the Remaining Personal Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Estate, the Remaining Personal Property, the ownership of the Remaining Personal Property prior to the date of the transfer to NBV, or the transfer of the Remaining Personal Property to NBV, are forever barred, estopped, and permanently enjoined from asserting such persons' or entities' Encumbrances against NBV, its successors or assigns, property, or assets.

9.    This Order (a) shall be effective as a determination that, on the Closing Date, all Encumbrances of any kind or nature whatsoever existing with respect to the Debtor, the Estate, or the Remaining Personal Property prior to the transfer of the Remaining Personal Property to NBV (other than as provided herein) have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be

binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or contracts.

10.     This Court retains jurisdiction over any matter or dispute arising from or relating to the implementation of this Order including, but not limited to, (a) retaining jurisdiction to compel delivery of the Remaining Personal Property to NBV, and (b) interpret, implement, and enforce the provisions of this Order and of the Stipulation.

11.     The purchase of the Remaining Personal Property pursuant to the Stipulation is undertaken by NBV in good faith, as that term is used in section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to transfer the Remaining Personal Property or to implement the Stipulation shall not affect the validity of the sale or the Stipulation as to NBV, except to the extent such authorization is duly stayed pending such appeal prior to such consummation.

12.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062 and 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and the Trustee and NBV are authorized to implement the Stipulation immediately.

# # #

Submitted by:

Joel L. Tabas
Florida Bar No. 516902
Tabas, Freedman, Soloff, Miller & Brown, P.A.
Attorneys for the Chapter 7 Trustee
14 Northeast First Avenue - Penthouse
Miami, Florida 33132
Telephone: (305) 375-8171
Telefax: (305) 381-7708
JTabas@tabasfreedman.com